# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————

№ 08-CV-847 (JFB) (AKT)

————————————

ZANADA GARDNER, AN INFANT UNDER THE AGE OF FOURTEEN (14) YEARS, BY HER
MOTHER AND NATURAL GUARDIAN SABRINA GARDNER AND SABRINA GARDNER,
INDIVIDUALLY,

Plaintiffs,

VERSUS

UNIONDALE PUBLIC SCHOOL DISTRICT, ET AL.,

Defendants.

————————————

**MEMORANDUM AND ORDER**
October 21, 2008

————————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Sabrina Gardner ("Gardner") brings this action against the Uniondale Public School District, Turtle Hook Middle School (hereinafter, the "school" or the "District"), and two of the school's employees, "Jane" Titus ("Titus") and "Jane" Boreum ("Boreum") (collectively, "defendants"), on behalf of her infant daughter, Zanada Gardner ("Zanada"), and herself. The complaint in this action alleges violations of the Individuals with Disabilities Education Act ("IDEA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504" or the "Rehabilitation Act"), as well as asserts state law claims of negligence and loss of services, arising out of Zanada's education in the sixth grade as a disabled child.

The lawsuit focuses on an incident on

February 5, 2007 when Zanada, who suffers from Type I Diabetes, was allegedly denied immediate access to a bathroom by a substitute teacher, in contravention of her Section 504 Plan. According to plaintiffs, after being told by the substitute teacher that she could not use the bathroom at that time, Zanada went to the bathroom without the substitute teacher's permission and was then not allowed by the teacher to return to the classroom. Plaintiff also alleges that Zanada was yelled at by a teacher on February 16, 2007 and that, following the February 5th incident, she was frequently sent to the nurse's office because of her diabetic condition, thereby missing time in the classroom. Defendants assert that the substitute teacher simply was unaware of Zanada's condition on February 5th or her special bathroom privileges and that, following this incident, the District was

willing to meet with plaintiffs to rectify this problem (and plaintiffs' other concerns) through the administrative process, but plaintiffs refused and, at the end of the school year, moved out of the District.

Defendants now move to dismiss the claims brought by Gardner and Zanada (collectively, "plaintiffs"), pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, defendants' motion to dismiss the federal claims without prejudice under Rule 12(b)(1) for failure to exhaust is granted. In particular, it is undisputed that plaintiffs failed to exhaust their IDEA and Rehabilitation Act claims. Although plaintiffs attempt to argue that the exhaustion requirement should not apply to this lawsuit and/or it would have been futile because their claims are for past injuries for which they seek only monetary damages (that are unavailable under the IDEA), that contention fails as a matter of law under the circumstances of this case. Plaintiffs have asserted an IDEA claim in this case and they clearly are alleging, as further articulated in their opposition papers, that Zanada was denied a free and appropriate education because of this alleged conduct. Moreover, although plaintiffs argue in a conclusory fashion that there was a "failure to implement" Zanada's 504 Plan by the school which demonstrates futility, it is undisputed that the Plan was, in fact, implemented and that the incident in early February 2007 was the first time that the school allegedly failed to comply with the provisions of the Plan. There is no question that these types of issues – involving a substitute teacher's failure on one day to allow Zanada special access to the bathroom pursuant to her 504 Plan and the other issues raised by plaintiffs regarding Zanada's educational environment – are precisely the types of problems that the

Second Circuit has made clear can potentially be addressed and rectified by a school through the administrative process. Second, although plaintiffs argue that exhaustion is futile because they have left the school district, it is axiomatic that plaintiffs cannot thwart the administrative process and create futility by removing their child from the school and/or leaving the school district. In short, plaintiffs did not seek to correct the situation by utilizing the administrative process; rather, they want to recover monetary damages, primarily for the incident on February 5, 2007, as well as the alleged verbal scolding by a teacher on February 16, 2007, without giving the defendants an opportunity to analyze and rectify the problem through the administrative process. Such is not the purpose of the IDEA or related claims under other statutes pertaining to a student's educational services, and plaintiffs' desire to only recover monetary damages does not change the analysis and allow them to by-pass the IDEA exhaustion requirement. To hold otherwise would allow plaintiffs to run to federal court to obtain money damages without satisfying the exhaustion requirement any time, on any given day, a school allegedly fails to meet the requirements of a student's individualized plan, even though the administrative process could address such problems with the expertise of administrators who are familiar with issues related to the education of disabled students. Thus, the exhaustion requirement applies to plaintiffs' IDEA claim and related claim under the Rehabilitation Act, and no grounds for futility have been demonstrated. Accordingly, the federal claims must be dismissed without prejudice for failure to exhaust. Of course, plaintiffs may attempt to pursue monetary damages (without satisfying the exhaustion requirements) for these two alleged incidents under causes of action that potentially exist

under state law, such as negligence, although this Court expresses no view as to the existence and/or merits of such claims under state law in this context. However, given the dismissal of the federal claims without prejudice for failure to exhaust, the Court declines to exercise supplemental jurisdiction over the state law claims contained in the complaint.

## I. BACKGROUND

### A. The Complaint

The following facts are taken from the complaint and are not findings of fact by the Court.

According to the complaint, Zanada, an infant under the age of fourteen, was enrolled as a student at Turtle Hook Middle School in Uniondale, New York for the school year 2006-2007. (Compl. ¶ 8.) During that period, Zanada suffered from Type I Diabetes and was, therefore, a disabled individual within the meaning of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Individuals with Disabilities Education Act ("IDEA"), Public Law 94-142, 20 U.S.C. §§ 1400-1490. (*Id.* ¶ 9.)

Plaintiffs allege that, on or about November 21, 2006, representatives of the Uniondale Public School District and Turtle Hook Middle School, in conjunction with Gardner, created an Individualized 504 Plan (the "504 Plan" or the "Plan") for Zanada for the 2006-2007 school year. (*Id.* ¶ 10.) The Plan allowed Zanada, among other things, access to the bathroom upon request. (*Id.* ¶ 13.)

According to the complaint, on February 5, 2007, Zanada was denied access to the school's bathroom during school hours in contravention of her 504 Plan. (*Id.*) At that time, Zanada was "sent into the school hallway unsupervised by a member of the Defendants' teaching staff." (*Id.*) The denial of access to the bathroom allegedly caused Zanada to sustain "severe and permanent personal injuries." (*Id.*)

Plaintiffs allegedly complained to defendants about this incident. (*Id.* ¶ 14.) The complaint allegedly resulted in "a pattern of assault, harassment, discrimination and negligent retaliatory behavior" towards Zanada by "the Defendants, its employees, servants or agents, including school faculty and administrators." (*Id.*)

An instance of this behavior allegedly occurred on February 16, 2007, when a member of Turtle Hook Middle School's teaching staff allegedly "verbally assaulted/berated" Zanada "without justification, causing her to sustain severe and permanent personal injuries." (*Id.* ¶ 15.)

As a result of the above-described behavior, plaintiffs allege that Zanada sustained a serious personal injury, requiring medical attention and incapacitating her. (*Id.* ¶ 19.)

### B. Additional Facts

In their opposition papers, plaintiffs provided some additional details regarding the alleged incidents that are referenced in the complaint. With respect to the February 5, 2007 incident with the substitute teacher, plaintiffs recount the following:

> On February 5, 2007, the Plaintiff [i.e., Zanada] entered the reading class being taught

b[y] a substitute teacher, Ms. Titus. The Plaintiff was reprimanded for being late to class and the teacher took her name down. The Plaintiff then requested to use the bathroom. Ms. Titus refused to allow the Plaintiff to use the bathroom despite the clear language found in her 504 Plan. The Plaintiff then proceeded to approach the teacher's desk to ask whether she could use the bathroom and once again she was told no. The Plaintiff then explained to Ms. Titus that she had diabetes but the teacher refused to allow her to use the bathroom. The Plaintiff, having been refused her bathroom privileges, then indicated to Ms. Titus that she was going to leave to use the bathroom. Ms. Titus then stated that if the Plaintiff walked out, she was not to return to the classroom. The Plaintiff then went to the bathroom and returned to the classroom and took her seat. A discussion ensued wherein Ms. Titus stated that she did not have to agree to the Plaintiff's request and the Plaintiff mentioned that she did. The Plaintiff was then told to exit the classroom and remain in the hallway by Ms. Titus. While waiting in the hallway, a security guard approached Zanada and inquired as to why she was in the hallway. Upon hearing the facts of the incident, the

security guard escorted Zanada to the nurse's office.

(Plaintiffs' Opposition Memorandum, at 1-2) (citations to exhibits omitted).[1] Other than the February 5, 2007 incident with the substitute teacher, plaintiffs do not allege that Zanada was even temporarily denied access to the use of the bathroom on any other occasions.

With respect to the incident on February 16, 2007, plaintiffs provided the following additional details regarding their version of the events:

Another example of such conduct occurred on February 16, 2007, while the infant Plaintiff attended Ms. Boreum's reading class. The infant Plaintiff was unable to log onto the website because she had forgotten her password. The teacher proceeded to scold the infant for not listening to instructions and spit on the infant Plaintiff in the process. The teacher then advised the infant Plaintiff to go to the nurse's office. Zanada stayed in the nurse's office for the remainder of the period and

---

[1]  According to defendants, "the [s]ubstitute initially asked Zanada to wait five minutes before using the bathroom because she was late and because she was not yet aware there was a student in the class with a disability based on what she had read in the substitute folder. At all other times during which she was a student at Turtle Hook Middle School, Zanada was allowed to use the bathroom upon request." (Defendants' Reply Memorandum, at 2) (citations to exhibits omitted).

started feeling the effects of said confrontation in the form of a headache, stomach ache and nausea two class periods later. Zanada was seen by the school nurse and upon arriving at home, Zanada felt dizzy and vomited, and her mother called an ambulance to transport her to Nassau University Hospital. The Plaintiff, Sabrina Gardner, was advised by the doctors who treated Zanada that she was experiencing hyperglycemia caused by duress.

(*Id.* at 4.) (citations to exhibits omitted).

Plaintiffs assert that the incident on February 16, 2007 was just one illustration of a practice by teachers beginning in February 2007 of Zanada "constantly being sent to the nurse's office and missing her education." *(Id.* at 13.) According to plaintiffs, this conduct by teachers in addressing Zanada's diabetic condition in February 2007, which allegedly caused plaintiff to miss instruction and adversely affected her grades, "resulted in the denial of a free and appropriate education to the infant Plaintiff." *(Id.* at 14.) At the conclusion of the 2007 school year, plaintiffs left the school district and Zanada is now enrolled in a different district. *(Id.* at 10.)

### C. Procedural History

Plaintiffs filed a complaint in this action on February 1, 2008 in the Supreme Court of the State of New York, County of Nassau. On February 29, 2008, defendants removed this case to the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. §§ 1331 and 1441(b).

On May 2, 2008, defendants moved to dismiss the complaint in its entirety, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). Plaintiffs responded on June 16, 2008. Defendants replied on June 30, 2008. Oral argument was heard on October 3, 2008.

### II. STANDARD OF REVIEW

The defendants have moved to dismiss both under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

In reviewing a motion to dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but we are not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted). Moreover, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but we may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* (citations omitted). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

In reviewing a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). The plaintiff must satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d

143, 157-58 (2d Cir. 2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007). The Court does not, therefore, require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.* at 1974. Further, in reviewing a motion to dismiss under Rule 12(b)(6), "the district court is normally required to look only to the allegations on the face of the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). The Court may only consider a document not appended to the complaint if the document is "incorporated in [the complaint] by reference" or is a document "upon which [the complaint] *solely* relies and . . . is *integral to the complaint*." *Id.* (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (emphases in original)). Courts also "'routinely take judicial notice of documents filed in other courts . . . not for the truth of the matters asserted in other litigation, but rather to establish the fact of such litigation and related filings.'" *Crews v. County of Nassau*, No. 06-CV-2610 (JFB), 2007 U.S. Dist. LEXIS 6572, at *5 n.2 (E.D.N.Y. Jan. 30, 2007) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

"A court presented with a motion to dismiss under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6) must decide the 'jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction.'" *Coveal v. Consumer Home Mortgage, Inc.*, No. 04-CV-4755 (ILG), 2005 U.S. Dist. LEXIS 25346, at *7 (E.D.N.Y. Oct. 21, 2005) (quoting *Magee v. Nassau County Med. Ctr.*, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)); *see*

*also Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (noting that a motion to dismiss for failure to state a claim may be decided only after finding subject matter jurisdiction).

## III. DISCUSSION

Defendants move to dismiss plaintiffs' federal claims pursuant to Fed. R. Civ. P. 12(b)(1). Specifically, defendants argue that this Court lacks subject-matter jurisdiction over plaintiffs' claim under the IDEA and the Rehabilitation Act, both of which are subject to the exhaustion requirement of IDEA under the circumstances of this case where the claims relate to Zanada's education as a disabled child. The IDEA requires plaintiffs who assert claims relating to the education of disabled children to exhaust all available administrative remedies prior to bringing suit in federal court. 20 U.S.C. § 1415(l). In the absence of exhaustion, a federal court may not exercise subject-matter jurisdiction over the action.

As set forth below, the Court agrees and concludes that plaintiffs' IDEA and Section 504 claims must be dismissed for failure to exhaust.

### A. Applicable Federal Law

#### 1. The IDEA Statute

The purpose of the IDEA is to provide children with disabilities access to a "free appropriate public education." 20 U.S.C. §§ 1400(c), (d). In passing IDEA, "Congress sought primarily to identify and evaluate handicapped children, and to provide them with access to a free public education." *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S.

176, 200 (1982). "Under the educational scheme of the IDEA (previously known as the Education of the Handicapped Act), parents of students with disabling conditions are guaranteed both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate. Parents are specifically entitled to request a due process hearing in order to present complaints as to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education." *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008) (citation and quotations omitted). The primary mechanism of the statute is the design and implementation of an Individualized Education Plan ("IEP") to address each student's particular disabilities. 20 U.S.C. § 1414. The IEP sets forth (1) a statement of the child's present levels of academic achievement and functional performance; (2) a statement of measurable annual goals; (3) a description of how the child's progress toward meeting the annual goals will be measured; (4) a statement of the educational services to be provided; (5) an explanation of the extent, if any, to which the child will not participate with nondisabled children in the regular class; (6) a statement of any individual accommodations necessary to measure the child's performance on standardized assessments (or an explanation of why the child cannot participate in the assessments); (7) the projected date for the implementation of services, as well as the anticipated frequency, location, and duration of the services; and (8) a plan for achieving post-secondary school goals and provisions for transitional services. 20 U.S.C. § 1414(d)(1)(A).

2. The IDEA's Exhaustion Requirement

It is well-settled that, prior to bringing a suit in federal court under the IDEA, plaintiffs must exhaust all available administrative procedures. 20 U.S.C. § 1415(l). In the State of New York, these include an impartial hearing and an appeal of the hearing officer's decision to a state review officer. 20 U.S.C. §§ 1415(f), (g); 8 N.Y.C.R.R. § 200.5. Parents may request a hearing to present complaints relating to the "identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to the child." 20 U.S.C. § 1415(b)(6). "[F]ailure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction." *Polera v. Bd. of Educ. of the Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 483 (2d Cir. 2002) (citing *Hope v. Cortines*, 69 F.3d 687, 688 (2d Cir. 1995)).

Furthermore, the IDEA statute requires plaintiffs with *any* claims related to the education of disabled children, whether brought under IDEA or another statute (*i.e.*, the Rehabilitation Act), to exhaust the administrative remedies available under IDEA prior to initiating a federal lawsuit. 20 U.S.C. § 1415(l) ("Nothing in this title shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this part, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this part.") (citations omitted); *Polera*, 288 F.3d at 481 ("[P]otential plaintiffs

with grievances related to the education of disabled children generally must exhaust their administrative remedies before filing suit in federal court, even if their claims are formulated under a statute other than the IDEA (such as the ADA or the Rehabilitation Act).”); *accord J.S. v. Attica Cent. Schs.*, 386 F.3d 107, 112 (2d Cir. 2004); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 248 (2d Cir. 2008) (“The language of Section 1415(l) of the IDEA is sufficiently broad and encompasses complaints asserted under any federal statute, as long as they seek relief available under the IDEA.”); *Marc V. v. North East Independent School District,* 455 F. Supp. 2d 577, 592 (W.D. Tex. 2006) (“The IDEA bars Plaintiffs from circumventing the IDEA’s administrative exhaustion requirement by taking claims that could have been brought under the IDEA and repackaging them as claims under some other statute.”); *Hope v. Cortines*, 872 F. Supp. 14, 17 (E.D.N.Y), *aff’d*, 69 F.3d 687 (2d Cir. 1995) (holding that ADA, Section 1983 and Section 2000d claims are subject to IDEA’s exhaustion requirement).

Similarly, IDEA’s exhaustion requirement can apply despite plaintiffs’ claim for damages, which are not available under the statute. *Polera*, 288 F.3d at 487 (“Courts in the Second Circuit have required exhaustion of administrative remedies even where damages were held to be unavailable through the administrative process. In such cases, plaintiffs were not permitted to evade the IDEA’s exhaustion requirement merely by tacking on a request for money damages.”); *Buffolino v. Bd. of Educ. of Sachem Cent. Sch. Dist. at Holbrook*, 729 F. Supp. 240, 247 (E.D.N.Y. 1990) (“[I]f the Court were to hold that plaintiffs in this case are excused from exhausting their remedies because adequate relief could not be obtained, plaintiffs could

avoid administrative procedures merely by asking for relief that administrative authorities could not grant.”); *see also B.D. v. DeBuono*, 130 F. Supp. 2d 401, 428 (S.D.N.Y. 2000) (“[P]laintiffs should not be allowed to avoid the administrative requirements of IDEA by claiming only monetary damages or other relief not available under IDEA.”).

In determining whether plaintiffs should be subject to the exhaustion requirement, the Second Circuit instructs courts “to consider whether administrative review would further the goals of developing facts, making use of available expertise, and promoting efficiency.” *J.S.*, 386 F.3d at 113 (citing *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303 (9th Cir. 1992)).

### B. Applicability of Exhaustion Requirement to the Instant Case

To the extent that plaintiffs argue that the exhaustion requirement is inapplicable because they are only seeking monetary damages, the Court disagrees.

First, as discussed in detail above, the fact that plaintiff is only seeking monetary damages, which are not available under the IDEA, does not necessarily mean that they avoid application of the IDEA’s exhaustion requirement. As the Second Circuit recently emphasized:

> [I]n *Polera*, we held that a disabled student who claims deficiencies in her educational program may not bypass the IDEA’s administrative exhaustion rule merely by claiming monetary damages . . . We thus decline to excuse appellants from the exhaustion

requirement merely because in their suit they seek, *inter alia,* pecuniary damages, a remedy unavailable under the IDEA.

*Cave,* 514 F.3d at 247 (citation omitted). In the instant case, the complaint clearly alleges a separate cause of action for violation of the IDEA. Moreover, as set forth in plaintiffs' opposition papers, plaintiffs are unquestionably alleging that the school deprived Zanada of a free and appropriate education. For example, plaintiffs describe in great detail how the defendants deprived Zanada of educational services in violation of the Section 504 Plan:

> The teachers were clearly frustrated with Zanada's condition and with having a diabetic child in their classroom. In fact, Mrs. Boerum repeatedly told Zanada that "I know your mother will blame the diabetes." A direct indication that the defendants were aware of Zanada's disease and discriminating against her because of her disability. Academically she was caused to miss a lot of instruction because of the events which transpired during the 2006-07 school year at Uniondale Public Schools and her grades suffered accordingly. She experienced a very stressful and fractured educational experience at the Turtle Hook Middle School and this experience left both Plaintiff's [sic] frustrated with the academic process and her educational and social development. Zanada was reluctant to go to classes where she would be afraid of the teachers, she was embarassed and made to feel like an outcast and the end result was Zanada's social regression.

(Plaintiffs' Memorandum in Opposition, at 14) (citations to record omitted). Based upon these allegations, plaintiffs contend that "it is clear that the Defendants' conduct has resulted in the denial of a free and appropriate education to the infant Plaintiff." *Id.*; *see also id.* at 12 ("Based on the continued harassment of the infant Plaintiff during the 2006-7 school year she was denied a free and appropriate public education.")

Therefore, it is abundantly clear that, even though plaintiffs are seeking monetary damages, they are alleging a deprivation of educational services that is within the province of the IDEA. Moreover, their Section 504 claim arises from the same alleged incidents in the school that form the basis of the IDEA claim and, thus, is also subject to the exhaustion requirement. Finally, the fact that plaintiffs are also alleging that the situation in the school had certain consequences outside the school, in terms of counseling and treatment (for which they also seek damages) does not relieve them from the exhaustion requirement.

This is precisely the type of situation that the Second Circuit confronted in *Polera* and the Court made clear that, where the issues raised in the litigation are those the IDEA is intended to remedy, the exhaustion requirement applies regardless of the remedy sought by plaintiff or the additional causes of

actions asserted under other federal statutes:

> The IDEA is intended to remedy precisely the sort of claim made by Polera: that a school district failed to provide her with appropriate educational services. The fact that Polera seeks damages, in addition to relief that is available under the IDEA, does not enable her to sidestep the exhaustion requirements of the IDEA. Where, as here, a full remedy is available at the time of injury, a disabled student claiming deficiencies in his or her education may not ignore the administrative process, then later sue for damages. Therefore, we hold that, absent an applicable exception, Polera was required to exhaust her administrative remedies.

*Polera*, 288 F.3d at 488; *see also Cave*, 514 F.3d at 246 (noting that, in *Polera*, "[w]e emphasized that the theory behind the grievance may activate the IDEA process, even if the plaintiff wants a form of relief that the IDEA does not supply") (quotations and citation omitted).

In *Charlie F. v. Board of Education of Skokie School District*, 98 F.3d 989 (7th Cir. 1996), which the Second Circuit cited with approval in *Polera*, the Seventh Circuit reached the same conclusion. In *Charlie F.*, the plaintiff did not bring an IDEA claim, but rather sought damages under the ADA, the Rehabilitation Act, Section 1983, and state tort law. Although the Seventh Circuit recognized that the IDEA did not authorize monetary damages, the court refused to stop its analysis at that point and, instead, still applied the IDEA exhaustion requirements to the other federal claims:

> Charlie asks us to stop here: he wants compensatory money damages, the IDEA does not provide this form of relief, and that is that. Things are not so clear, however. The statute speaks of available relief, and what relief is "available" does not necessarily depend on what the aggrieved party wants. Certainly not in litigation. . . . The nature of the claim and governing law determine the relief no matter what the plaintiff demands.

98 F.3d at 992. The Seventh Circuit then provided a hypothetical to illustrate the point:

> Suppose a school fails to provide a reader for a blind pupil, who as a result falls behind. The IDEA provides relief: the school can assign a reader to the pupil for the future and can provide tutors and other special instruction until the pupil catches up. If disgruntled parents spurn this solution and demand compensation, the response should be that they cannot ignore remedies available under the IDEA and insist on those of their devising; under the IDEA, educational professionals are supposed to have at least the first crack at formulating a plan to

overcome the consequences of educational shortfalls. That the educational problem has consequences outside school (for example, the child's self-esteem and ability to get along with his peers might suffer when he lags behind in class) can't be enough to avoid the statutory system. . . . By making an unreasonable or unattainable demand parents cannot opt out of the IDEA.

98 F.3d at 992; *accord Babicz v. School Bd. of Broward County,* 135 F.3d 1420, 1422 (11th Cir. 1998) (claims regarding the denial of publicly financed special education under Section 504 of Rehabilitation Act and the ADA are subject to the IDEA's exhaustion requirement); *Frazier v. Fairhaven School Committee,* 276 F.3d 52, 59-63 (1st Cir. 2002) (plaintiff bringing an IDEA-based claim under Section 1983, in which they sought only monetary damages, must exhaust the administrative process).

Therefore, despite plaintiffs' claims for damages pursuant to the Rehabilitation Act and state law, plaintiffs must comport with the requirements of IDEA, which is intended to remedy precisely the type of claim presented here – namely, that local school authorities failed to adequately provide a disabled student with appropriate educational services and educational environment. *Polera,* 288 F.3d at 488. As the gravamen of plaintiffs' action here relates to the deprivation of free and appropriate educational services, which is clearly within the ambit of the IDEA, their request for damages pursuant to other federal statutes and state tort law does not allow them to evade the statute's exhaustion requirement. *See, e.g., White v. McComb Separate School*

*Dist.,* No. 02-61070, 2003 WL 21356070, at *1 (5th Cir. May 30, 2003) (unpublished opinion) (affirming dismissal of IDEA claim for failure to exhaust where plaintiffs claimed that student "who is severely and profoundly disabled, mentally and physically handicapped, fell out of a chair at a table in the special education classroom to which she was assigned by defendants").

"[T]he primary reason for an exhaustion requirement is to utilize the expertise of administrators" who are familiar with resolving issues relating to the education of disabled students. *SJB v. N.Y. City Dep't of Educ.,* No. 03-CV-6653 (NRB), 2004 U.S. Dist. LEXIS 13227, at *14 (S.D.N.Y. Jul. 14, 2004) (citing *Polera,* 288 F.3d at 487); *Polera,* 288 F.3d at 487 ("The IDEA's exhaustion requirement was intended to channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances."); *Taylor v. Vt. Dep't of Educ.,* 313 F.3d 768, 791 (2d Cir. 2002)). Even in instances where an administrative hearing and appeal are unsuccessful in resolving a dispute, such procedures "will at least have produced a helpful record because administrators versed in the relevant issues were able to probe and illuminate those issues for the federal court." *J.S.,* 386 F.3d at 112-13 (citing *Riley v. Ambach,* 668 F.2d 635, 640 (2d Cir. 1981)).

In short, the IDEA is intended to remedy the claims made by plaintiffs: "that a school district failed to provide her with appropriate educational services." *Polera* at 488. Here, plaintiffs assert that Zanada is a disabled child within the meaning of the IDEA and the alleged claims clearly concern the sufficiency of her education under the IDEA. However, plaintiffs make no allegation that they have

exhausted their administrative remedies under IDEA. Therefore, plaintiffs' claims are barred for failure to exhaust available administrative remedies unless they fall within the narrow exemption outlined below.

## C. "Futility" Exception to IDEA's Exhaustion Requirement

The exhaustion requirement does not apply in situations in which "exhaustion would be futile because administrative procedures do not provide adequate remedies." *Heldman v. Sobol*, 962 F.2d 148, 158 (2d Cir. 1992) (citing *Honig v. Doe*, 484 U.S. 305, 326-27 (1988) (stating that "parents may bypass the administrative process where exhaustion would be futile or inadequate") and *Smith v. Robinson*, 468 U.S. 992, 1014 n.17, 104 S. Ct. 3457, 82 L. Ed. 2d 746 (1984)). Such futility has been found where: (1) the plaintiff would be seeking administrative relief from the same entity that failed to implement specific provisions of the student's individualized education program; (2) the problems alleged are "systemic violations" that cannot be addressed by the available administrative procedures; or (3) the agency would have been unable to remedy the alleged injury at the time it occurred. *Polera*, 288 F.3d at 488-89; *J.S.*, 386 F.3d at 113; *see also Michaels v. Mills*, 2004 U.S. Dist. LEXIS 6155 (W.D.N.Y. Feb. 14, 2004) ("[T]here are several exceptions to the IDEA's exhaustion requirement, including, *inter alia*, (1) futility, (2) 'an agency has failed to provide services specified in the child's individualized education program [IEP]' and (3) 'an agency has adopted a policy or pursued a practice of general applicability that is contrary to law.'") (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 789 (2d Cir. 2002)). The party seeking to avoid exhaustion bears the burden of showing futility. *Polera*, 288 F.3d at 488 n.8

(citing *Honig*, 484 U.S. at 327).

Plaintiffs, although conceding that they have not exhausted the administrative remedies, argue that the futility exception to the exhaustion requirement should apply for two separate reasons: (1) there was a failure to implement Zanada's Section 504 Plan (Plaintiffs' Memorandum of Law, at 5-8); and (2) Zanada "suffered injuries in past, is seeking monetary damages and has moved" (*Id.* at 9). The Court will analyze these grounds separately and, as discussed below, finds that such grounds do not exist in this case, and there is no basis for finding futility.

### (1) Failure to Implement

Plaintiffs claim that defendants' alleged failure to adhere to a provision of Zanada's Plan on at least one occasion – when a substitute teacher erroneously told her she could not immediately use the bathroom and Zanada was not allowed by the teacher back into the classroom after she went to the bathroom over the teacher's objection – constitutes a "failure to implement" her individualized 504 Plan. On that basis, plaintiffs argue that their IDEA-related claims should be exempted from the exhaustion requirement. *Polera*, 288 F.3d at 489; *see also SJB*, 2004 U.S. Dist. LEXIS 13227, at *16 ("[W]here an IEP-related claim is based on a district's failure to implement services already spelled out in an IEP, exhaustion is excused.") (citing *Polera*, 288 F.3d at 489, and *Heldman*, 962 F.2d at 158 n.11); *Michaels v. Mills*, 02-CV-0555E(F), 2004 U.S. Dist. LEXIS 6155, at *13 (W.D.N.Y. Feb. 14, 2004) ("[T]he 'legislative history of the IDEA suggests an exhaustion exception for situations concerning the *implementation* of an IEP, as opposed to the *contents* of an IEP.'") (emphases in original) (quoting

*Joseph M. v. S.E. Delco Sch. Dist.*, No. 99-CV-4645, 2001 U.S. Dist. LEXIS 2994, at *25 (E.D. Pa. Mar. 19, 2001)). The Court disagrees for two main reasons: (1) a singular failure to comply with a provision of an individualized plan is not a failure to implement within the meaning of the futility exception; and (2) assuming *arguendo* that the plaintiffs' allegations did constitute a failure to implement within the meaning of the exception, they do not *solely* relate to a failure of implementation, as is required for futility to exist, but rather also include potential deficiencies in the contents of the Plan, including a lack of specificity as to how to ensure compliance with the provisions of the Plan.

As is clear from the complaint, and confirmed by counsel at oral argument, plaintiffs do not allege that the District wholly failed to implement Zanada's Plan. In fact, there is no allegation that any failure to comply with the Plan took place until February 2007 – more than two months after the plan was created. What is alleged is that, on at least one occasion, defendants failed to adhere to one accommodation provided for in Zanada's 504 Plan. Specifically, plaintiffs allege that a substitute teacher, who had never taught Zanada before, knowingly or inadvertently denied Zanada access to the bathroom in violation of her 504 Plan. (50-h hearing of Zanada, at 13.) Plaintiffs point to the statement of Senator Paul Simon, a co-sponsor of the two acts that formed the foundation of the IDEA, to support their argument that this incident should exempt their claims from the exhaustion requirement.

> It is important to note that there are certain situations in which it is not appropriate to require the exhaustion of [IDEA]

administrative remedies before filing a civil law suit. These include complaints that. . . an agency has failed to provide services specified in the child's individualized education program.

131 Cong. Rec. § 10396-01 (1985). However, that statement cannot form the basis for a broad exception to the exhaustion requirement that does not exist in the IDEA's statutory language and would completely undermine the exhaustion requirement that Congress clearly included in the statute. *See, e.g., U.S. ex rel. Fullington v. Parkway Hosp., Inc.*, 351 B.R. 280, 286 n.4 (E.D.N.Y. 2006) ("The Supreme Court has emphasized the dangers in courts interpreting statutes by relying on remarks from floor debates or similar comments by lawmakers to discern legislative intent.") (citations omitted). In fact, the Second Circuit has explicitly examined Senator Simon's statement and found that

> [w]ere [the Second Circuit] to accept Senator Simon's broad language without qualification, a plaintiff could plausibly frame any IEP-related claim as one of "implementation" and thereby sidestep the IDEA's exhaustion requirement. Under such an interpretation, the futility exception would swallow the exhaustion requirement. Moreover, the exhaustion requirement is predicated on Congress's belief, expressed through the statutory scheme, that administrative agencies can "get it right": that the agencies themselves are in the optimal position to identify and correct

their errors and to fine-tune the design of their programs. Sweeping exceptions to the exhaustion requirement are at odds with this belief.

*Polera*, at 489. Allowing exemption from the exhaustion requirement for the case at hand would indeed allow the exception to swallow the requirement. As the Court noted in oral argument, the logic of plaintiffs' position would allow parents to bypass administrative process and immediately seek redress in federal court for all types of similar situations, including if their child's tutor missed one session due to illness.[2] These are precisely the sort of claims that the administrative process is well-equipped to address and resolve.[3]

Further, plaintiffs do not solely allege a failure to implement; their allegations clearly challenge the clarity and sufficiency of the Plan as well. In evaluating claims of futility on the basis of a "failure to implement," the Second Circuit has advised that "a court must closely examine a plaintiff's claims before concluding that they involve nothing more than 'implementation' of services already spelled out in an IEP . . . [A plaintiff's] assertion that her claim relates solely to implementation does not make it so." *Polera*, 288 F.3d at 489. In *Polera*, the court found that the plaintiff's claim "unavoidably encompasse[d] both a failure to provide services and a significant underlying failure to specify what services were to be provided." *Polera*, 288 F.3d at 489.

Although plaintiffs argue that the school simply failed to implement services provided for in the 504 Plan, upon closer examination it is clear that this alleged failure could be due in part to a lack of clarity in the Plan as to, among other things, what was required to ensure compliance with the provisions of the Plan. The Plan merely states that Zanada was "to be allowed to use the bathroom or water fountain upon request" without providing any mechanism by which Zanada would exercise this privilege. The Plan does not specify (1) whether the provision overrides the school policy that students were not to use the bathroom during the first five minutes of class; (2) how the provision interacts with the

---

[2] At oral argument, counsel for plaintiffs attempted to distinguish the case at hand from such an example on the basis that Zanada's injuries are irreparable, whereas a child whose tutor misses a session may seek a substitute session. This distinction does not explain why plaintiffs' claims meet the "failure to implement" exemption, while the example given does not. In any event, the issue regarding whether Zanada's attempt to recover damages is a proper distinction is addressed elsewhere in this Memorandum and Order in response to plaintiffs' argument that their claims fall within the exemption for injuries that cannot be remedied through the administrative process. Moreover, the Court also noted at oral argument that the logic of plaintiffs' position would allow parents to go immediately to federal court to recover monetary damages, without exhaustion, if a class parent on a school-sanctioned trip was unaware of Zanada's 504 Plan and failed to provide her with immediate access to a bathroom upon her request on one occasion. Such a result, like the instant case, is entirely inconsistent with the IDEA exhaustion requirement.

[3] In fact, counsel for plaintiffs acknowledged during oral argument that the use of the administrative process could have potentially prevented similar types of incidents, which allegedly disrupted Zanada's learning experience, from recurring in the future.

school policy requiring teachers to sign each student's agenda book before they go to the bathroom;[4] (3) how the provision was to be communicated to full-time or substitute teachers; or (4) how Zanada was to communicate her need to use the restroom for medical reasons to her teachers. In fact, plaintiffs state that they specifically requested that the school "brief substitutes/paraprofessionals on students with a disability in the classroom setting." (Gardner's Aff. ¶¶ 7-8.) However, this was never included in Zanada's 504 Plan, an alleged deficiency of content that plaintiffs could have challenged through the administrative procedures available.[5]

Further, there was nothing in Zanada's Plan to indicate how a teacher was to respond to a change in behavior that may be the result of Zanada's medical condition. Plaintiffs allege that Zanada was denied academic instruction because she was "run out of the classroom to the nurse's office for menial things that could be handled in a different way"[6] (Gardner's Aff. ¶ 34.), yet there was nothing in her Plan to indicate how staff should respond to incidents short of a "medical crisis." Plaintiffs even point out that behavior "which ha[s] been categorized by the staff of the Turtle Hook School as 'disruptive', 'isolated', or warranting 'admonishment' are all behaviors normal for diabetic children to display and to a trained professional more appropriately categorized as 'irritability', 'hunger', 'headache', 'lack of concentration', 'increased or excessive thirst', 'fatigue', 'weakness'. . ." (Gardner's Aff. ¶ 46.) Therefore, it may be that sending Zanada to the nurse's office when she was acting in a way that the teachers interpreted as disruptive may have been the proper course of action, but this is a question of sufficiency of the content of Zanada's individualized plan, not implementation of it. Plaintiffs' claim clearly is not one solely about implementation of an individualized plan.[7]

Where the obligations of the school are not clear, and the administrative process could have provided appropriate relief, the claims will not fall within the "failure to implement" exception. Exhaustion under such circumstances serves many important aims: (1) permitting the exercise of agency discretion and expertise on issues requiring these characteristics; (2) allowing the full

---

[4]  50-h hearing of Zanada Gardner, p. 15.

[5]  Plaintiffs assert without explanation that the school was responsible for conducting such briefing and that they requested this "through the use of administrative protocol." During Gardner's 50-h hearing testimony, she explained that, during a meeting with the school principal and dean of students after the February 5, 2007 incident, she suggested that the school "get [its] staff together, train [its] staff, educate [its] staff on disability." (Gardner's 50-h hearing testimony, at 28.)

[6]  The only specific example provided in the complaint is an incident in which "Jane" Boreum allegedly yelled at Zanada, claiming that she was "not following her directions correctly," because she forgot her password and was unable to log into the website that the class was using. (50-h hearing of Zanada, at 26-27.) As the teacher was yelling, she was allegedly spitting on Zanada. *Id.* at 27. The teacher then sent Zanada to the nurse's office, where she called her mother who told her to remain there for the rest of the class period. *Id.* at 30-31.

[7]  In fact, even if these issues regarding sending Zanada to the nurse on too many occasions could be construed as relating solely to implementation, it is not a wholesale *failure* to implement that is being alleged, but rather, in essence, *over-implementation* of the Plan.

development of technical issues and a factual record prior to court review; (3) preventing deliberate disregard and circumvention of agency procedures established by Congress; and (4) avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any error. *See Polera,* 288 F.3d at 487; *accord Hope v. Cortines*, 872 F. Supp. 14, 19 (E.D.N.Y. 1995). As the Sixth Circuit has noted, "States are given the power to place themselves in compliance with the law . . . Federal Courts – generalists with no expertise in the educational needs of handicapped students – are given the benefit of expert factfinding by a state agency devoted to this very purpose." *Crocker v. Tenn. Secondary Sch. Athletic Ass'n*, 873 F.2d 933, 935 (6th Cir. 1989); *accord Polera*, 288 F.3d at 487 (citing *Crocker*).

These goals would be served by exhaustion of administrative remedies in a case such as that before this Court. After the incidents complained about in this case, the school allegedly attempted to propose various amendments to the 504 Plan that would fill these gaps, such as giving Zanada a card that she could show to teachers when she needed to be excused from class.[8] In addition, after the February 16, 2007 incident, Zanada was moved "immediately" from Boreum's reading class into a class with another teacher at Gardner's request. (50-h hearing testimony of Gardner, at 69-70.) These are just the sort of

factual issues that would be best addressed, at least in the first instance, with the input and expertise of school administrators. As such, bringing suit in federal court is premature and in contravention of the aims of the administrative exhaustion requirement.

For these reasons, plaintiffs' federal claims are not exempted from the IDEA's exhaustion requirements under the "failure to implement" exception.

(2) Unable to Remedy Alleged
Injury

Plaintiffs also argue that, because Zanada is seeking monetary damages for past injury and has left the school district, the futility exception should apply. As a threshold matter, as discussed in detail *supra,* the mere fact that only monetary damages are being sought does not provide a basis for avoiding the exhaustion requirement and the Court will not repeat that analysis here. To the extent that plaintiffs, relying on *Covington v. Knox County School System*, 205 F.3d 912 (6th Cir. 2000), argue that the fact that monetary relief is being sought for past injury (combined with plaintiffs having moved out of the district) satisfies the futility exception, the Court finds that argument entirely unpersuasive.

First, the fact that plaintiffs switched school districts without availing themselves of the administrative process does not provide a basis for futility. The Second Circuit and other courts have emphasized that giving plaintiffs control over whether their claims are subject to the exhaustion requirement defeats the requirement's purpose. *See Polera,* 288 F.3d at 490 ("[W]e reiterate our holding that disabled-student plaintiffs, like Polera, should not be permitted to 'sit on' live claims and spurn the administrative process that could

---

[8] Gardner said that she met with the school principal and the dean of students after the February 5, 2007 incident and that the principal "tried to come up with different case scenarios of what she could do to give Zanada a pass or give her a card to show and wave in the class that she needs to go to the bathroom or come to her and get a pass if she needs to go to the bathroom." (Gardner's 50-h hearing testimony, at 26-27).

provide the educational services they seek, then later sue for damages. Were we to condone such conduct, we would frustrate the IDEA's carefully crafted process for the prompt resolution of grievances through interaction between parents of disabled children and the agencies responsible for educating those children. The fact that the administrative process could not provide damages does not render Polera's claim futile . . . ."); *see also Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 63 (1st Cir. 2002) (finding that "even after graduation, compensatory education is an available remedy" and that "the entire matter of timing is largely within a plaintiff's control. . . . It would be a hollow gesture to say that exhaustion is required – and then to say that plaintiffs, by holding back until the affected child graduates, can evade the requirement.") (citation omitted); *Charlie F. by Neil F. v. Board of Educ.*, 98 F.3d 989, 992 (7th Cir. 1996) ("[b]y making an unreasonable or unattainable demand parents cannot opt out of the IDEA"); *Doe v. Smith*, 879 F.2d 1340 (6th Cir. 1989) (parents may not avoid the state administrative process through the "unilateral act of removing their child from a public school"); *Ruecker v. Sommer,* 567 F. Supp. 2d 1276, 1297 (D. Or. 2008) (graduation does not render exhaustion futile) (collecting cases); *Amidon v. Michigan,* No. 04-75003, 2008 WL 723536, at *12-13 (E.D. Mich. March 17, 2008) (student's withdrawal from the school does not render exhaustion futile).

Thus, consistent with *Polera* and the case authority from other circuits, courts have rejected arguments regarding futility where the parents made the unilateral decision to move out of the school district before exhausting the administrative process. For example, in *N.B. by D.G. v. Alachua County School Bd.*, 84 F.3d 1376, 1379 (11th Cir.

1996), the Eleventh Circuit rejected plaintiff's argument that exhaustion was not required because she no longer attended any of the defendant schools. In particular, the court explained:

> If parents can bypass the exhaustion requirement of the IDEA by merely moving their child out of the defendant school district, the whole administrative scheme established by the IDEA would be rendered nugatory. Permitting parents to avoid the requirements of the IDEA through such a "back door" would not be consistent with the legislative intent of the IDEA.

*Id.*;[9] *see also Doe By and Through Doe v. Smith,* 879 F.2d 1340, 1343 (6th Cir. 1989) ("parents' unilateral act of removing their child from a public school . . . does not mean that the procedures in the [IDEA] may be by-

---

[9] The Eleventh Circuit also rejected the argument, as this Court does in the instant case, that the district's lack of authority under the IDEA to grant the relief sought – namely, money damages – constitutes futility. *Id.* ("The plaintiff argues there is no point pursuing administrative remedies because the defendant school districts lack authority to grant the relief requested, namely money damages. Again, if the plaintiff's argument is to be accepted, then future litigants could avoid the exhaustion requirement simply by asking for relief that administrative authorities could not grant. This goes against the very reason we have the exhaustion requirement, which is [to prevent] deliberate disregard and circumvention of agency procedures established by Congress.... In fact, courts that considered this argument have all rejected it.") (citations and quotations omitted).

passed. Absent a showing that exhaustion of the administrative process would be futile or inadequate, . . . parents and guardians [must] *use* the state process which the act specifies shall be provided to them.") (citation and quotations omitted); *Torrie By and Through Torrie v. Cwayna,* 841 F. Supp. 1434, 1441-42 (W.D. Mich. 1994) (dismissing claims for alleged violations of IDEA, Rehabilitation Act, as well as false arrest/false imprisonment, because of failure to exhaust and rejecting argument that exhaustion was not required because plaintiffs had left the school district). Similarly, in the instant case, this Court concludes that the unilateral decision by plaintiffs in the instant case to transfer out of the Uniondale School District at the end of the school year without exhausting their administrative remedies does not allow this case to fall within the futility exception.

Second, although plaintiffs rely on the Sixth Circuit's decision in *Covington v. Knox County School System*, that non-binding case is clearly distinguishable from the instant case. In *Covington,* the plaintiff brought suit under 42 U.S.C. § 1983, alleging constitutional violations of a disabled student's rights, but not raising IDEA claims. Specifically, the plaintiff in *Covington* asserted that school officials disciplined the student by locking him in a small, dark, unventilated room for long periods of time. In considering the applicability of the IDEA exhaustion requirement, the court held "that in the unique circumstances of this case – in which the injured child has already graduated from the special education school, his injuries are wholly in the past, and therefore money damages are the only remedy that can make him whole – proceeding through the state's administrative process would be futile and is not required before the plaintiff can file suit in federal court." 205 F.3d at 917. The facts in *Covington* are substantially different from the case before this Court in several ways, including: (1) there was no available remedy in *Covington* under the administrative process *at the time of the injury* because the gravamen of the plaintiff's complaint was not about the sufficiency of the education available to the disabled child; and (2) the fact that there were no available remedies under the administrative process was not the result of a unilateral act on the part of plaintiff.

The Second Circuit in *Polera* distinguished cases like the one before this Court from the facts in *Covington:*

> Despite certain similarities between Covington and the instant case – both Polera and the plaintiff in Covington had already graduated and complain of past, not ongoing, conduct – Polera's claim is distinguishable from the "unique circumstances" of Covington, which in any case is not binding on this Court. Although the Sixth Circuit focused on the fact that the plaintiff student had graduated, damages would have been the only adequate remedy even had he sought immediate relief at the time of the wrongdoing. Nothing could "undo" the harm that he had suffered. In contrast, had Polera pursued administrative procedures at the time of the alleged wrongdoing, she could have obtained the materials she needed and, perhaps, remedial tutoring or schedule adjustments to undo the effects of the wrong. For Polera, unlike the plaintiff in Covington, a fully effective

remedy was available at the time; she simply chose not to pursue it.

*Polera v. Bd. of Educ.*, 288 F.3d 478, 490 (2d Cir. 2002). The Court in *Polera* made clear that "[w]hether the administrative process is able to remedy the injury must be viewed at the time of the injury, not when the suit was filed." *M. v. Stamford Bd. of Educ.*, 3:05-cv-0177, 2008 U.S. Dist. LEXIS 67988, at *6 (D. Conn. Sept. 9, 2008) (citing *Polera*, 288 F.3d at 490) (distinguishing *Covington*, on the grounds that administrative remedies were available at time of injury); *accord Eads ex rel. Eads v. Unified School Dist. No. 289, Franklin County, Kan.,* 184 F. Supp. 2d 1122, 1135 (D. Kan. 2002) (rejecting argument that plaintiff seeking monetary damages need not exhaust and noting that unique circumstances of *Covington* were inapplicable). In *Covington*, the gravamen of the claim was for past injuries after the student had graduated, that even at the time of injury would not have been considered claims relating primarily to the education of the disabled. That is not true of the case at hand. The gravamen of plaintiffs' claims here relate to the educational services provided to a disabled child by the alleged mishandling of her disability, claims that could have been resolved by administrative proceedings at the time of injury. In fact, as noted *supra*, counsel for plaintiffs conceded at oral argument that it was not impossible for the District at the time of the alleged injury to make modifications to Zanada's Plan that could potentially have rectified the situation going forward and alleviated the alleged deprivation of educational services that was allegedly resulting from the school's mishandling of Zanada's disability.

Thus, in the instant case, an administrative remedy was available to plaintiffs at the time of the alleged injury. For example, plaintiffs claim that Zanada "missed a lot of instruction" as a result of being sent out of the classroom on a few occasions, "and that her grades have suffered accordingly." (Gardner's Aff. ¶ 34.) The administrative process could have provided tutoring to help Zanada cover any material she missed on those occasions. Additionally, plaintiffs claim that Zanada's individualized plan was violated by a substitute teacher. The administrative process could have added procedures to the Plan to ensure that such violations did not occur again. The injuries suffered by Zanada are precisely the kind for which the administrative process would be most beneficial. In fact, the school offered potential solutions to fix the problem going forward but plaintiffs refused them without availing themselves of the administrative options available to challenge the situation. The fact that Zanada allegedly also suffered injuries that could not be remedied through the administrative process does not, without more, exempt plaintiffs from the exhaustion requirements of the IDEA. *See Booth v. Churner*, 532 U.S. 731, 738 149 L. Ed. 2d 958, 121 S. Ct. 1819 (2001) ("The word 'exhausted' has a decidedly procedural emphasis. It makes sense only in referring to the procedural means, not the particular relief ordered. . . . It makes no sense to demand that someone exhaust 'such administrative [redress]' as is available; one 'exhausts' processes, not forms of relief, and the statute provides that one must."). In short, *Covington* has no application to the alleged facts in the instant case and there are no grounds for concluding that exhaustion of the administrative remedies would have been futile in this case.

### (3) "Good Faith" Effort to Exhaust

Plaintiffs also argue, without citing any case authority, that they made "good faith efforts to exhaust their administrative remedies" (Pl. Mem. P. 11) and, therefore, their claims should be exempted from the exhaustion requirement. As set forth below, plaintiffs have failed to allege any conduct by the defendants in terms of extraordinary delay that would warrant a determination of futility in the case based on such delay.

This Court recognizes that, in rare cases, extraordinary delay by a school district could be a basis for finding futility. Specifically, in *Frutiger v. Hamilton,* 928 F.2d 68 (2d Cir. 1991), the Second Circuit dismissed an appeal by parents of a disabled child in which they (1) claimed that the administrative process was taking too long, and (2) contended that the district court should hold an evidentiary hearing on that issue. In reaching that decision, however, the Second Circuit stated, "We do not doubt that the frustration caused by this experience induced plaintiffs to bypass the administrative process in challenging the CSE's recommended IEP for 1990-91 and to seek immediate review in the district court." *Id.* at 73. Thus, although finding lack of appellate jurisdiction, the Court suggested that futility could be found in the extraordinary case: "[I]f state administrative bodies persistently fail to render expeditious decisions as to a child's educational placement, district courts have the power under § 1415(e)(2) to assume jurisdiction over the review process on the grounds that exhaustion would be futile or inadequate and thereafter make a final determination as to a child's program and placement." *Id.* at 74.

In the instant case, plaintiffs' allegations of delay by the defendants utterly fail to demonstrate any undue delay by the defendants in initiating the administrative process. Specifically, plaintiffs allege that Gardner attended a meeting with the school principal and dean of students after the February 5, 2007 incident. (50-h hearing testimony of Gardner, at 25-27.) Gardner rejected the proposals put forth by the school to improve the situation going forward. (*Id.* at 25-27.) On February 13, 2007, Ms. Gardner was scheduled to meet with Mary Klein, the District's 504 Coordinator. When Gardner arrived with an attorney, Klein asked to adjourn the meeting to another time. Gardner refused and said, "'No. That's it. I'm tired of playing games. That's it.'" (50-h hearing testimony of Gardner, at 78.) Plaintiffs also concede that, after the alleged February 16, 2007 incident, Gardner contacted the Superintendent, who suggested that a meeting be scheduled to discuss the incident, but "Ms. Gardner refused to attend such a meeting due to the fact that the previous meeting had been canceled and the events affecting her daughter had failed to cease." (Plaintiffs' Memorandum in Opposition, at 12.) Gardner never filed a written appeal or complained to the Uniondale Board of Education, nor did she ever request a hearing. (50-h hearing testimony of Gardner, at 79.)

Given these allegations by plaintiffs, any contention that the defendants' undue delay in the administrative process warrants a finding of futility is clearly without merit. The postponement of one meeting by defendants does not constitute extraordinary delay. In fact, it is abundantly clear from plaintiffs' own allegations that they abandoned any dialogue with the District within weeks of the alleged incidents, despite the District's willingness to meet, and plaintiffs never sought to pursue the administrative process. In short, the inconvenience involved in

postponing a meeting does not rise to the level of thwarting plaintiffs' attempts to exhaust. Accordingly, any claim by plaintiffs of undue delay is rejected. *See Schlude v. Northeast Central School District,* 892 F. Supp. 560 (S.D.N.Y. July 24, 1995) ("We see no reason to conclude in this case that the state officials have persistently failed to render expeditious decisions on pendency placement issues. Therefore, the *Frutiger* Court's observation is inapplicable to this case.").

In sum, plaintiffs' claims under the IDEA and the Rehabilitation Act are not exempted from the exhaustion requirement of the IDEA under the futility exception, and this Court may not exercise subject matter jurisdiction over them. Accordingly, the federal claims are dismissed without prejudice for failure to exhaust.[10]

─────────────────────

[10] Defendants alternatively move to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that the allegations set forth in the complaint, viewed in the light most favorable to the plaintiffs, fail to establish a claim under IDEA or Section 504. They argue that plaintiffs do not allege sufficient details in the complaint to support a plausible claim that Zanada was denied a free and appropriate public education as required by IDEA. *See e.g., Van Duyn v Baker Sch. Dist.,* 502 F.3d 811, 815 (9th Cir. 2007) (finding "that when a school district does not perform exactly as called for by the IEP, the district does not violate the IDEA unless it is shown to have materially failed to implement the child's IEP. A material failure occurs when the services provided to a disabled child fall significantly short of those required by the IEP"). Similarly, with respect to the Section 504 claim, defendants argue that plaintiffs have not alleged the "gross negligence" or "bad faith" required to make out such a claim. *See, e.g., Scaggs v. New York State Dept. of Educ.,* No. 06-CV-0799 (JFB) (VVP), 2007 WL 1456221, at *54 (E.D.N.Y. May 16, 2007) ("'something more than a mere violation of the IDEA is necessary. . .

## D. State Law Claims

Having determined that this Court lacks subject matter jurisdiction over plaintiffs' federal claims, the Court concludes that retaining jurisdiction over the state law claims is unwarranted. 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.,* No. 06-CV-6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 53 (2d Cir. 1986)).

Therefore, in the instant case, the Court, in its discretion, "'decline[s] to exercise supplemental jurisdiction'" over plaintiffs' state law claims because "it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. N.Y.-Presbyterian Hosp.,* 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)); s*ee also Cave v. E. Meadow Union Free Sch. Dist.,* 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental

─────────────────────

[rather,] a plaintiff must demonstrate that a school district acted with bad faith or gross misjudgment'") (quoting *Wenger v. Canastota Cent. Sch. Dist.,* 979 F. Supp. 147, 152 (N.D.N.Y. 1997)). The Court will not address the Rule 12(b)(6) motion given plaintiffs' failure to exhaust.

jurisdiction."); *Karmel v. Liz Claiborne, Inc.*, No. 99 Civ. 3608 (WK), 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

Accordingly, pursuant to 42 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over the remaining state law claims given the absence of any federal claims that survive dismissal, and dismisses such state claims without prejudice.

IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the federal claims is granted without prejudice, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, for failure to exhaust. The Court declines to retain jurisdiction over plaintiffs' remaining state law claims and dismisses such claims without prejudice. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: October 21, 2008
Central Islip, New York

* * *

The attorney for plaintiffs Zanada and Sabrina Gardner is John A. Ardito, Esq. of Ardito & Ardito, LLP, 659 Franklin Avenue, Franklin Square, New York, 11010. The attorney for the defendants Uniondale Public School District, Turtle Hook Middle School, "Jane" Titus and "Jane" Boreum is Lewis R. Silverman, of Rutherford & Christie, LLP, 369 Lexington Avenue, 8th Floor, New York, New York 10017.